UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesus PEREZ, Benjamin Ascencion Marquez and Salomon De La Garza-Garza,
Defendants-Appellants.

Nos. 80–1140 to 80–1142.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 12, 1980.
Decided May 11, 1981.

---

Leon Thikoll, Thikoll, Johnston & Rosen, Tucson, Ariz., for Garza-Garza.

Hermilio Iniguez, Gama, Guerrero & Iniguez, Phoenix, Ariz., for Perez.

Howard E. Beckler, Hollywood, Cal., for Marquez.

Roger W. Dokken, Asst. U. S. Atty., Phoenix, Ariz., argued for U. S. A.; Arthur G. Garcia, Phoenix, Ariz., on brief.

Before GOODWIN and CANBY, Circuit Judges and PECK, Senior Circuit Judge.*

CANBY, Circuit Judge.

The defendants were charged with importing heroin, possession of heroin and conspiracy. The district court denied a motion to suppress the heroin, which was found by government agents when they searched a truck after stopping the defendants. The government did not allege that its agents had probable cause to search the truck. The court ruled, however, that the search was valid either because it was an extended border search or because it was conducted with the truck owner's consent. We must reverse the court's decision in both respects. On the record before us, however, there is doubt whether the defendants had a legitimate expectation of privacy with regard to the truck, so that an illegal search

* The Honorable John W. Peck, Senior United States Circuit Judge, Sixth Circuit, sitting by designation.

of it would violate their fourth amendment rights. Because this issue was not addressed in district court, we therefore remand for further proceedings to determine whether the defendants' fourth amendment rights were violated by the search of the truck.

## FACTS

On October 17, 1979, defendant Perez entered the United States at Nogales, Arizona. Perez appeared nervous so the customs inspector requested identification. He used this information to trace Perez through the Treasury Enforcement Communications System. The computer printout said that Perez and defendant de la Garza were suspected of smuggling drugs from Mexico into Arizona. The inspector searched Perez but found nothing.

When Perez left the port of entry, a customs officer followed him. Perez met Marquez and de la Garza at a bar in Nogales. After a short time, the three left the bar, and drove a white car to a nearby motel. The next morning, they left the motel and drove to the bus deport near the border. Perez stayed there while Marquez and de la Garza walked into Mexico. They returned a few hours later, and met Perez at the bar. The three drove around in the white car for a while before returning to the bar. That evening, they were joined by a man named Sanchez. After they talked, Sanchez returned to Mexico. The other three stayed the night at another motel.

The next morning, the three defendants checked out of the motel. Perez tried several times to make a call from a public telephone on the street. Finally, he was successful and the three drove the white car to a K-Mart parking lot three miles north of the border. A green truck pulled into the lot, and Sanchez got out. He and Perez talked. Then Sanchez and Perez drove away in the truck. A few minutes later, Marquez and de la Garza followed in the car.

The truck and car drove north, tailed by several customs patrol cars. They stopped at a border patrol checkpoint. Sanchez told the immigration officers that he was a Mexican citizen. He said he had just come from Mexico to pick up some farm equipment in Casa Grande, Arizona. The border patrol officer observed a Mexican registration sticker on the truck windshield. This information was radioed to the customs officers who followed. The truck and car proceeded north. In Tucson, they turned west toward Casa Grande. From Tucson to Casa Grande, the vehicles were under both air and ground surveillance. In fact, during the entire 160-mile trip from Nogales to Casa Grande, the customs agents' surveillance was virtually unbroken.

Once in Casa Grande, the four men left the truck in a parking lot, and drove into the desert in the white car. In the desert, they stopped at the side of the road to eat and drink. As it got dark, the customs officers approached the four men with weapons drawn. The officers did not give the men their *Miranda* warnings, although they did interrogate them. The officers asked Sanchez if they could search the truck. He said yes. The officers returned with the men to the parking lot. The officers again asked Sanchez if they could search the truck. Sanchez said yes, and handed the keys to one of the officers. A dog trained in narcotics sniffed at the gas tank. When the officers searched the gas tank they found four pounds of heroin taped to the inside of the tank. The officers used a wire found in the white car to extract the heroin. Then the officers advised the four men of their *Miranda* rights, and interrogated them again.

The defendants and Sanchez were charged with importing heroin in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) & (b), possession of heroin in violation of 21 U.S.C. §§ 841 (a) & (b), and conspiracy in violation of 21 U.S.C. §§ 846 & 963. Sanchez died before trial. The remaining defendants moved to suppress the evidence obtained by government agents after their arrest. The district court suppressed all statements made without benefit of *Miranda* warnings and all physical evidence, except the wire, obtained during the search in the desert.

The court admitted the heroin itself into evidence. The defendants were convicted on all counts.

## EXTENDED BORDER SEARCH

■ The district court found that the search of the truck was valid as an extended border search. We disagree. The nervous movements of the four men plus the unverified tip from the computer information system may form the "mere suspicion" needed to justify a customs search at the border or in its immediate vicinity. *Alexander v. United States*, 362 F.2d 379, 382 (9th Cir.), *cert. denied*, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). That is not, however, the standard to be applied to an extended border search.

■ When entering this country, a car and its passengers are subject to a customs search without probable cause. *United States v. Kessler*, 497 F.2d 277, 279 (9th Cir. 1974). At the border, the fact of entry is apparent. Away from the border, it is not. Therefore, this court has previously recognized only two circumstances when a car and its passengers are properly subject to "extended border searches" away from the border. *Id.*

In *Alexander,* this court said that an extended border search is valid if customs officers can determine "with reasonable certainty" that any contraband which might be found in the vehicle was aboard the vehicle when it crossed the border. 362 F.2d at 382. In *United States v. Weil*, 432 F.2d 1320 (9th Cir. 1970), *cert. denied*, 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971), this court said that an extended border search is valid if customs agents are "reasonably certain" that parcels have been smuggled across the border and placed in a vehicle, whether or not the vehicle itself has actually crossed the border. *Id.* at 1323. This court has held that "reasonable certainty" is a stricter standard than probable cause. *United States v. Kessler*, 497 F.2d at 279.

■ The search in this case cannot be justified by the reasoning of *Alexander* or

*Weil.* The customs agent did not see the truck until it was three miles north of the border in the middle of a busy border town. The agents could not have been reasonably certain that the truck had recently crossed the border or that it contained drugs which had recently crossed the border. *United States v. Anderson*, 509 F.2d 724, 726 (9th Cir.), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). A week after the search, the customs agents learned that the truck had been in the United States for an hour and a half before this first sighting. We note that government agents will not be allowed to justify an extended border search with information which was not available to the agents at the time of the search. *United States v. Ramos*, 473 F.Supp. 1109, 1111 (S.D.Fla.1979); *see United States v. Tilton*, 534 F.2d 1363, 1366–67 (9th Cir. 1976). However, even this information could not justify the search. The 90–minute gap in surveillance was enough to change the contents of the truck, and therefore, the customs agents could not be reasonably certain that any contraband found in the truck had crossed the border.

## CONSENT

■ If the search of the truck cannot be characterized as a border search or an extended border search, then it is valid only if supported by probable cause or consent. *United States v. Ortiz*, 422 U.S. 891, 896–97, 95 S.Ct. 2585, 2588–89, 45 L.Ed.2d 623 (1975); *Almeida-Sanchez v. United States*, 413 U.S. 266, 273, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). The government has never alleged that the search of the truck was supported by probable cause. The district court found, however, that the search was conducted with the consent of the owner, Sanchez. We disagree. The government failed to prove that consent for the search was given freely and voluntarily. *See Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968).

■ Consent to a search may be voluntary, even though it is given by a person in police custody. *United States v. Page*, 302

F.2d 81, 83 (9th Cir. 1962). But there is nothing in the record here to indicate that Sanchez gave his consent freely and voluntarily. The customs agents approached the four men with weapons drawn, and separated them for interrogation. At no time prior to the search did they read the men their *Miranda* warnings. The government has shown nothing to dissuade us from the obvious conclusion that Sanchez's consent was coerced. Under the circumstances, however, it is doubtful that the government could meet this seemingly insurmountable burden. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 240–41 n.29, 93 S.Ct. 2041, 2055 n.29, 36 L.Ed.2d 854 (1973); *Channel v. United States*, 285 F.2d 217, 221 (9th Cir. 1960); *United States v. Marrese*, 336 F.2d 501, 504 (3d Cir. 1964); *Villano v. United States*, 310 F.2d 680, 684 (10th Cir. 1962); *Judd v. United States*, 190 F.2d 649, 651 (D.C. Cir. 1951).

## CONCLUSION

Because the district court erred in finding that the search of the truck was valid as an extended border search or as a consent search, we must remand for further proceedings to determine whether the defendants may raise the fourth amendment issue at all.

 To raise the fourth amendment issue, the defendants must prove that their fourth amendment rights were violated by the search of the truck.[1] An illegal search violates the rights of those persons who have "a legitimate expectation of privacy in the invaded place." *United States v. Salvucci*, 448 U.S. 83, 91–92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *United States v. Whitney*, 633 F.2d 902, 907 (9th Cir. 1980). It is clear that Sanchez would have had a legitimate expectation of privacy in the truck, since he was the owner and driver. But Sanchez died before trial. Whether any of the other defendants had a sufficient connection to the truck to give rise to an expectation of privacy has not been addressed.[2] *See Rakas v. Illinois*, 439 U.S. at 148–49, 99 S.Ct. at 433; *Rawlings v. Kentucky*, 448 U.S. 98, 104–107, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *United States v. Mackey*, 626 F.2d 684, 686–87 (9th Cir. 1980). The defendants may have had a subjective expectation that the heroin would not be discovered if hidden in the gas tank, but that expectation is not one which the law recognizes as legitimate. *Rakas v. Illinois*, 439 U.S. at 143–44 n.12, 99 Ct. at 430–31 n.12.

This issue was not raised in the district court. But we feel that the defendants' failure to assert a privacy interest in the truck "may well be explained by the related failure of the Government to make any challenge in the District Court to [their] standing to raise [the] Fourth Amendment claim." *Combs v. United States*, 408 U.S.

1. In the recent past, this issue would have been characterized as one of the defendants' standing to object to the search. The Supreme Court no longer views the question as one of standing, however; the issue is now regarded as one of whether the defendants' substantive fourth amendment rights were invaded. *United States v. Salvucci*, 448 U.S. 83, 87 n.4, 100 S.Ct. 2547, 2551 n.4, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *see United States v. Whitney*, 633 F.2d 902, 906 (9th Cir. 1980).

2. As we stated in footnote one, the fourth amendment issue is no longer viewed as one of standing. Therefore, the defendants cannot claim automatic standing because they were charged with possession of the goods seized. In *United States v. Salvucci*, 448 U.S. 83, 100

S.Ct. 2547, 65 L.Ed.2d 619 (1980), the Supreme Court overruled the automatic standing rule of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). 448 U.S. at 85, 100 S.Ct. at 2549. *See also Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Neither can the defendants claim automatic standing because they were charged with conspiracy. *United States v. Prueitt*, 540 F.2d 995, 1004 & n.3 (9th Cir. 1976), *cert. denied sub nom. Petersen v. United States*, 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977); *United States v. Boston*, 510 F.1d 35, 37–38 (9th Cir. 1974), *cert. denied*, 421 U.S. 990, 95 S.Ct. 1994, 44 L.Ed.2d 480 (1975). Instead, the defendants must show that their substantive fourth amendment rights were violated by the search.

224, 227, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972); *United States v. Salvucci*, 448 U.S. at 95, 100 S.Ct. at 2555. Therefore, we remand to the district court to determine whether the remaining defendants do have the required privacy interest. At the hearing, defendants will have the burden of proving that their own fourth amendment rights were violated by the search of the truck. *Rakas v. Illinois*, 439 U.S. at 130–31 n.1, 99 S.Ct. at 423–24 n.1; *Rawlings v. Kentucky*, 448 U.S. at 104, 100 S.Ct. at 2561.

REVERSED AND REMANDED.