990 F.2d 1263
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cesar JUAN, Defendant-Appellant.
 No. 91-10374.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 1, 1993.*
Decided March 15, 1993.
 
 Before FLETCHER, REINHARDT and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Cesar Juan was tried in the District Court for the District of Arizona and convicted of 1) possession with intent to distribute over 100 kilograms of marijuana, and 2) conspiracy to possess and distribute same. Juan appeals on two grounds. First, he contends that the district court erroneously denied his motion to suppress evidence seized from his truck and from cars driven by codefendants Norris and Kirmen. Second, he contends that newly discovered evidence entitles him to a new trial.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 The San Miguel gate, located at the border between the United States and Mexico, is an unmarked, unmanned opening in a border fence in the desert just south of Sells, Arizona, and a "known smuggling area." The gate lies on the Tohono O'Odham Reservation, an Indian Reservation which is transected by the international border. Reservation residents often pass through the gate to buy or sell goods at the market in nearby Sells and to conduct other legitimate business.
 
 
 4
 On November 7, 1990, Customs Officer Lambert Cross, who has been stationed in Sells for nineteen years, was maintaining surveillance at the San Miguel gate and observed the following:
 
 
 5
 8:55 am--A red hatchback car (later stopped with codefendant Norris at the wheel) travelled 10-20 yards into Mexico, made a U-turn, then returned to the United States. Agent Cross thought he recognized the U-turn as a "decoy maneuver" often used by drug traffickers to pull surveillance officers away from their positions.
 
 
 6
 9:55 am --A blue pickup truck (later determined to belong to Cesar Juan) entered Mexico and drove out of the agent's sight.[1]
 
 
 7
 10:25 am --Norris' red car re-crossed into Mexico and out of sight.
 
 
 8
 10:35 am --A blue car (later determined to belong to Frances Kirmen) entered Mexico and travelled in the same direction as the other two vehicles and then out of sight.
 
 
 9
 10:43 am --Norris' red car returned to the United States and drove north on Federal Route 19.
 
 
 10
 10:53 am --Kirmen's blue car did the same.
 
 
 11
 10:54 am --Juan's truck returned to the United States and proceeded north on Route 19. Officer Cross radioed descriptions of the vehicles to agents further north and then pursued the truck. Cross attempted to stop the truck about 1 1/2 miles from the border, but the driver jumped out while it was still moving and escaped on foot. Upon examining the truck, the officer saw bales (212 pounds) of marijuana in the bed.
 
 
 12
 Approximately 11:00 am --After receiving radio notification of the marijuana found in Juan's truck, Customs officer Floyd Garcia positioned himself on Federal Route 19 about 10 miles north of the border, where he observed Kirmen's blue car pass Norris' red car. He stopped Norris' car near milepost 14, searched the car, and discovered no contraband.
 
 
 13
 11:07 am --Responding to radio reports, Customs Officer Robert Antone stopped Kirmen's car. Kirmen consented to a search of the car. Antone discovered 261 pounds of marijuana.
 
 
 14
 Kirmen identified Juan as the driver of the blue pickup truck. At trial, Juan's convictions for 1) possession with intent to distribute over 100 KG of marijuana and 2) conspiracy to commit same, were predominantly based on Kirmen's testimony, particularly that Juan offered her $1000 to "make a run or a haul for him." On appeal, Juan argues that the evidence seized from his truck and from Kirmen's car should be suppressed because both vehicles were illegally stopped.
 
 
 15
 Juan also asks for a new trial on the basis of "newly discovered evidence" affecting Kirmen's credibility: Kirmen (allegedly) possessed $500 when she was arrested, and Juan (allegedly) overheard her tell her brother to remove a cashbox from under her bed to pay her bail. Although Juan witnessed these events at the time of arrest, he did not notify his attorney because he did not realize their significance until after he heard Kirmen testify that she was solely supported by public assistance.
 
 ANALYSIS
 I. Motion to Suppress Evidence.[2]
 
 16
 We review the district court's denial of Juan's suppression de novo. See United States v. Hernandez-Alvarado, 891 F.2d. 1414, 1416 (9th Cir., 1989). We affirm.
 
 
 17
 Searches conducted at an international border are permitted without a warrant, probable cause, or even articulable suspicion. United States v. Alfonso, 759 F.2d 728, 733-734 (9th Cir.1985). However, since Juan's truck was stopped on Federal Route 19, 1 1/2 miles away from the San Miguel gate, the stop in the present case was not a "border search." The stop of Juan's truck is nevertheless valid as an "extended border search" if, considering the totality of circumstances including time, distance, and the extent of surveillance from the border, customs officers possess "reasonable certainty that any contraband which might be found in the vehicle was aboard the vehicle when it crossed the border." United States v. Perez, 644 F.2d. 1299, 1302 (9th Cir., 1981). "Reasonable certainty is a stricter standard than probable cause." Id. The circumstances of the case and the surveillance by the agents must suggest that "there was [no] change of condition of the auto from the time it crossed the border until it was stopped." United States v. Alexander, 362 F.2d 379, 382 (9th Cir., 1966), cert. denied, 385 U.S. 977 (1966). Where a sufficiently large gap in surveillance allows the possibility of changing the contents of the car, reasonable certainty does not exist. Perez, 644 F.2d at 1302 (gap of 90 minutes).
 
 
 18
 In this case, Officer Cross followed Juan's truck from the border to where it was stopped 1 1/2 miles away. The road is isolated, surrounded by desert, and the nearest house to the north is the Smith ranch, nearly one mile away. The agent's continuous, uninterrupted surveillance provides "reasonable certainty" that the contents of the truck remained unchanged from the border to the point where it was stopped. We conclude that the stop of Juan's truck was a reasonable extended border search, and did not violate Juan's Fourth Amendment rights.
 
 
 19
 Juan also seeks suppression of the marijuana seized from Kirmen's car. Because Juan does not allege that he was a passenger in Kirmen's car or even that he was present when it was stopped, he has no standing to challenge the legality of the customs officers' decision to stop it. See United States v. Kovac, 795 F.2d 1509, 1510 (9th Cir.1986), cert. denied, 479 U.S. 1065 (1987). Juan attempts to sidestep this standing problem by arguing that the evidence seized from Kirmen's car was a "poisonous fruit" of the illegal stop of his truck. This argument fails at its premise: we have already concluded that the stop of Juan's truck was not illegal.
 
 II. Motion for New Trial
 
 20
 Kirmen's testimony that Juan offered her $1,000 to "make a run or a haul for him" was a crucial component of the case against Juan. Juan therefore argues that he is entitled to a new trial on the basis of newly discovered evidence that impeaches her testimony that public assistance is her sole source of income.
 
 
 21
 Newly discovered evidence entitles a defendant to a new trial if the following conditions are met:
 
 
 22
 1. The evidence must be newly discovered;
 
 
 23
 2. The failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;
 
 
 24
 3. The evidence must be material to the issues at trial;
 
 
 25
 4. The evidence must be neither cumulative nor merely impeaching; and
 
 
 26
 5. The evidence must indicate that a new trial would probably result in an acquittal.
 
 
 27
 United States v. Kulczyk, 931 F.2d 542, 548 (9th Cir., 1991).
 
 
 28
 The trial court properly denied defendant's motion for a new trial based on newly discovered evidence because several of these conditions are not met. First, the evidence is not newly discovered because Juan knew of these events before trial; he merely failed to inform his attorney of their existence. Second, even if the evidence in question had been discovered after the trial began, Juan has not shown the requisite due diligence in discovering relevant evidence. See United States v. Nace, 561 F.2d 763, 772 (9th Cir., 1977). Third, while evidence regarding Kirmen's financial status may bear on the credibility of her testimony in general, it does not directly address a material issue in the case. Finally, the "new evidence" is not so strong that the likely result of a new trial would be an acquittal. The motion for new trial was properly denied.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the Courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Agent Cross testified that he could "see a little ways [into Mexico], but not much."
 
 
 [2]
 The parties agree that the Gadsden Treaty provides Juan with all the protections provided by the Fourth Amendment to the Constitution