15 F.3d 1090
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph CALLES, aka Joe Calles, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raquel HARRIS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marvin David HARRIS, Defendant-Appellant.
 Nos. 92-10590, 92-10675 and 92-10699.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1993.
Decided Nov. 24, 1993.
 
 Before: ALARCON, LEAVY and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We affirm all three convictions.
 
 I. Calles appeal--92-10590
 
 3
 The standard for reviewing the sufficiency of the evidence and the district court's denial of the motion for acquittal is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992); United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989). Under this standard, the evidence against Calles was sufficient. Circumstantial evidence, and proper inferences drawn from it, may sustain a conviction. United States v. Restrepo, 930 F.2d 705, 709 (9th Cir.1991).
 
 
 4
 Calles owned all three of the recreational vehicles at one time or another. All three were specially customized with secret compartments for smuggling cocaine. Calles paid $10,000 for work on one of them even after he no longer owned it. Calles deposited over $700,000 in his bank accounts, despite a taxable income of under $10,000 shown on his tax return. The deposits came in structured form to avoid reporting and coincided with four border crossings by the recreational vehicles with secret compartments. The Harrises had a letter from Calles giving them permission to drive his recreational vehicle out of Mexico when they were caught coming back with three quarters of a ton of cocaine in the secret compartments. Another recreational vehicle was found parked in front of a business he owned with three tons of cocaine in the secret compartments.
 
 
 5
 When Calles was arrested, he said he had been expecting the police for quite some time. When told that he was being arrested for narcotics violations, he said "I never saw that motor home again." Since no one had a said a thing about motor homes until that moment, the police asked him what he meant. He said, "I gave it to them because they were going to buy it." This answered a question which had not been asked, and still did not explain why Calles happened to think of a motor home upon being told that he was being arrested for a narcotics violation. "The wicked flee when no man pursueth." Proverbs 28:1.
 
 
 6
 Of course inferences consistent with innocence could be drawn. Maybe someone forged the note on the dashboard. Maybe Calles was just depositing other peoples' money in trust. Maybe he just happened to be thinking about motor homes when he was arrested, and had not yet begun thinking about a narcotics arrest when he made his spontaneous declaration. Maybe it was just a coincidence that some malefactor parked another recreational vehicle stuffed with cocaine outside his business. But under Jackson, we ask whether a rational trier of fact could have convicted, not whether an acquittal might also have been conceivable. The evidence was sufficient to sustain Calles's conviction.
 
 
 7
 Calles also claims that the jury should not have been allowed to convict him for constructive possession, because he was not present when the Harrises drove three quarters of a ton of cocaine across the border. But he did not object to the constructive possession instruction, and it was not plain error. Fed.R.Crim.P. 30, 52(b). The relevant part of instruction # 14 was, "A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a substance, either directly or through another person or persons, is then in constructive possession of it." The key phrase, "dominion and control," was the same as would apply under a joint venture theory, which Calles urges should have been used at trial. Compare United States v. Restrepo, 930 F.2d 705, 709 (9th Cir.1991) (defining constructive possession) with United States v. Smith, 962 F.2d 923, 929-30 (9th Cir.1992) (defining joint venture). The evidence entitled the prosecution to argue that Calles exercised dominion and control over the cocaine the Harrises drove across the border, apparently for Calles, in Calles's recreational vehicle. There was no plain error in giving this instruction.
 
 II. Raquel Harris appeal--92-10675
 
 8
 Raquel Harris claims that the court erred in empaneling dual juries, one for her case, and another for the Calles and Marvin Harris cases. But she cannot prevail on her claim without showing specific prejudice to her constitutional, statutory, or procedural rights. United States v. Sidman, 470 F.2d 1158, 1169 (9th Cir.1973); see also Beam v. Paskett, 3 F.3d 1301, 1304-05 (9th Cir.1993). The only prejudice she argues is the introduction against Marvin Harris of the realtors' testimony that Marvin was shopping (alone) for expensive houses. When Raquel asked for a sidebar, the judge refused, but treated the request as an objection and admonished the jury that the evidence could be used only against Marvin, not Raquel. If there was error in allowing Raquel's jury to be present for this testimony, it was cured by the limiting instruction. United States v. Laykin, 886 F.2d 1534, 1544 (9th Cir.1989).
 
 
 9
 Raquel did not object below to the permissive inference instruction to which she now takes exception. The instruction was unnecessary and, with the benefit of hindsight, mistaken. United States v. Rubio-Villareal, 967 F.2d 294, 299 (9th Cir.1992) (en banc). Nevertheless, the instruction was not as bad as the one in Rubio-Villareal. In Rubio-Villareal, the jury was invited to infer knowledge from nothing but the two facts that the cocaine was concealed in the body of the vehicle, and the defendant was driving. In Raquel Harris's case, the inference was invited from the fact of driving a car containing contraband, "as well as all other evidence in this case." The error if any was not "plain," cf. United States v. Williams, 990 F.2d 507, 512 (9th Cir.1993). Rubio-Villareal had not yet come down when the case at bar was tried, so any error was not clear or obvious under current law. United States v. Olano, 113 S.Ct. 1770, 1777 (1993). Also, Raquel had the benefit of the additional paragraph saying that she, being just a passenger and not the driver, could not be convicted upon such an inference unless there was additional evidence connecting her to the cocaine.
 
 
 10
 Raquel also claims that the court erroneously limited the cross examination of her daughter-in-law Elizabeth, who had agreed to testify in exchange for immunity, government money and relocation. Raquel established in her cross-examination that she and Elizabeth had had a family argument of such magnitude that they did not speak to each other for two years, but the judge would not allow her to inquire into the causes of the argument. Raquel had already demonstrated bias, and the additional cross examination would have added nothing but motive. The trial court could properly keep it out. Bias was already so well established that this limitation of cross was within the trial judge's discretion. United States v. Guthrie, 931 F.2d 564, 567 (9th Cir.1991). A fortiori we find no abridgment of Raquel's constitutional right of confrontation. United States v. Vergas, 933 F.2d 701, 704 (9th Cir.1991).
 
 III. Marvin Harris appeal--92-10699
 
 11
 Marvin and Calles join in Raquel's argument about dual juries. But nothing even arguably prejudicial to them occurred because of the use of dual juries. It follows that they cannot prevail on this claim. Marvin also joins Raquel's argument on the permissive inference jury instruction. Our discussion above applies to him as well.
 
 
 12
 Marvin argues that the court erred by instructing the jury that it could find knowledge if it found beyond a reasonable doubt that the defendant "was aware of a high probability that cocaine or some prohibited drug was in the vehicle and deliberately avoided learning the truth," but not if the defendant believed there was no contraband in the vehicle "or was simply careless." Marvin did not object to this instruction below, and does not explain why he claims on appeal that the instruction should not have been given. We reject Marvin's argument that the failure to object amounts to ineffective assistance of counsel. This case involved a drug smuggler using a secret compartment, with a defense that the Harrises were "blind mules". This is the circumstance in which the instruction was approved in United States v. Jewell, 532 F.2d 697, 698-99 (9th Cir.) (en banc) cert. denied, 426 U.S. 951 (1976). The Strickland standard would not require an objection in these circumstances, nor is it plain that, had an objection been made, it would have or should have been sustained.
 
 
 13
 Marvin also argues that he received ineffective assistance of counsel because his lawyer did not object to the permissive inference instruction. The record is adequate for us to review this claim now, even though this case is the direct appeal. We reject it. Rubio-Villareal had not yet come down, so Marvin's attorney could not be expected to anticipate it. In a long and complex trial, it is not possible, nor is it usually effective, for a lawyer to object to everything which may conceivably be objectionable--he may make the wise tactical decision to refrain from objecting so that when he does object, the judge pays attention to what he says. Morris v. California, 945 F.2d 1456, 1463 (9th Cir.1991).
 
 
 14
 We also reject Marvin's argument that the district court should have suppressed the evidence obtained in the search of his home in Alabama, the recreational vehicle there, and his safety deposit box. The lawfulness of a search and seizure is a mixed question of law and fact reviewed de novo. United States v. Huffhines, 967 F.2d 314, 316 (9th Cir.1992). The probable cause finding is reviewed de novo, while findings of fact are reviewed for clear error. United States v. Nance, 962 F.2d 860, 862 (9th Cir.1992).
 
 
 15
 The warrant for the search of the house and motor home was supported by an affidavit that the daughter-in-law had received a phone call telling her to flee from the house immediately, take the motor home away with her, and abandon it. The DEA had told the officer that another motor home had been used by the Harrises to smuggle a large amount of cocaine across the border in secret compartments. The son again called the daughter-in-law and told her to get the key to Marvin's safe deposit boxes and hold it for him, so that he could clean the box out later. This information amply supported the issuance of the warrant. The warrant itself was reasonably specific, albeit hard to read because of the run-on sentence. United States v. Rodriguez, 869 F.2d 479, 486 (9th Cir.1989). The subsequent examinations of the cocaine smudges apparently were not put at issue below, so cannot be grounds for reversal here. United States v. Barrett, 703 F.2d 1076, 1086 n. 17.
 
 
 16
 The safe deposit boxes were searched on a separate federal warrant. The record provided to us does not show whether the federal district court which issued the search warrant for the safe deposit box had the affidavit submitted to the state court about the telephone call, in which Marvin's son told his wife to get the key so he could clean the box out. The DEA agent's affidavit, which the record shows was attached to the application for the warrant, said that in his experience and training, he had learned that large scale drug traffickers often hid large amounts of currency obtained from drug sales in their safe deposit boxes. If the federal court had both affidavits, probable cause was amply established. If the federal issuing officer had only the DEA agent's affidavit, then whether probable cause was established would be a closer question. We need not resolve it, though, because the warrant was sufficient on its face and not plainly defective, so suppression would be barred under United States v. Leon, 468 U.S. 897, 922 (1984).
 
 
 17
 A violation of Alabama law (if there was any) in the execution of the warrant by city police rather than county sheriffs is immaterial. No federal constitutional right was violated which would require suppression. Nor, for the same reason, does it matter whether the state warrant violated Fed.R.Crim.P. 41.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3