UNITED STATES of America,
Plaintiff–Appellee,

v.

John Jario GIL, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel MONTOYA, Defendant–Appellant.

Nos. 93–50458, 93–50646.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1995.

Decided July 6, 1995.

Michael Ian Garey, Santa Ana, CA, for defendant-appellant Gil.

Gordon S. Brownell, San Francisco, CA, for defendant-appellant Montoya.

David A. Hoffer, Asst. U.S. Atty., Santa Ana, CA, for plaintiff-appellee.

Before: BROWNING, D.W. NELSON and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

John Jario Gil, Daniel Montoya and Nanette Cruz were indicted for (1) conspiracy to possess cocaine with intent to distribute, and conspiracy to distribute cocaine, and (2) possession, with intent to distribute, of approximately 71 kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Gil and Montoya ("defendants") were convicted on both counts, and Cruz was convicted on the conspiracy count.[1] Gil was sentenced to a 235 month prison term; Montoya received a 135 month sentence. Both defendants appeal their convictions, and Gil also challenges the district court's calculation of his sentence. We affirm.

## I.

On September 1, 1992, acting on information received from a confidential informant,[2] officers of the Anaheim Police Department began surveillance of several people, including Gil and Montoya, who were suspected of trafficking cocaine. On several occasions, the police observed Gil and Montoya engaging in what the officers considered to be suspicious behavior, including counter-surveillance driving, deliveries of weighted bags to various locations, and frequent use of pagers and public telephones. On the basis of these observations, the officers obtained search warrants for a condominium on Avenida Abuelitos, an apartment on San Bruno street, and two other locations.

At the Abuelitos residence, the officers found 71 kilograms of cocaine, $7,200 in cash, photographs of the defendants together, and bills and airline tickets in Montoya's name. The officers also found a notebook containing a "drug ledger." The encoded entries showed incoming and outgoing quantities, with a total of 459 kilograms incoming and a balance of 71 kilograms. On one of the ledger pages, many of the entries were marked "Tono took" or "Tono brought" followed by the number of kilograms incoming or outgoing. Agents also executed the San Bruno warrant and discovered a safe containing $86,510 in cash, a passport in the name "John Antonio Gil," and various other papers

---

1. On March 15, 1993, the district court granted Cruz's motion for judgment of acquittal under Fed.R.Crim.P. 29(c).

2. The portion of the record pertaining to the confidential informant was sealed by the district court. We have reviewed the sealed record and are satisfied that the district court's decision to seal it was sound.

in Gil's name. Two ledger pages were found on a coffee table, and the entries thereon directly corresponded with the Abuelitos ledger, with the words "I took" or "I brought" appearing where the Abuelitos ledger had the words "Tono took" or "Tono brought."

## II.

Before trial, the defendants each filed motions to suppress the evidence seized pursuant to the search warrants. The district court denied the motions, ruling that the warrants were supported by probable cause.

### A. Probable Cause

■ The lower court's determination of probable cause will not be reversed absent a finding of clear error. *United States v. Pitts,* 6 F.3d 1366, 1369 (9th Cir.1993). The judge making the original determination of probable cause is accorded significant deference by the reviewing court. *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 856 (9th Cir.1991); *United States v. McQuisten,* 795 F.2d 858, 861 (9th Cir.1986).

■ Defendants argue that the search warrants were not based on probable cause, because the supporting affidavits merely listed observations of outwardly innocent behavior. However, observations of conduct consistent with drug trafficking, even though apparently innocuous, can give rise to probable cause. *See, e.g., United States v. Mejia,* 953 F.2d 461, 465 (9th Cir.1991) (actions inconsistent with a legitimate trucking business, together with pager calls and evasive driving, gave rise to probable cause), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992); *United States v. Ocampo,* 937 F.2d 485, 490 (9th Cir.1991) (counter-surveillance driving, tandem driving, a car switch, and beeper phone calls provided a substantial basis for the probable cause determination); *United States v. Hoyos,* 892 F.2d 1387, 1393 (9th Cir.1989) ("[T]hat some of these acts, if reviewed separately, might be consistent with innocence is immaterial."), *cert. denied,* 498 U.S. 825, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990); *United States v. Rodriguez,* 869 F.2d 479, 483 (9th Cir.1989) ("It is not uncommon for seemingly innocent con-

duct to provide the basis for probable cause.").

■ Furthermore, when interpreting seemingly innocent conduct, the court issuing the warrant is entitled to rely on the training and experience of police officers. *United States v. Arrellano–Rios,* 799 F.2d 520, 523 (9th Cir.1986) ("The experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause."); *United States v. Fouche,* 776 F.2d 1398, 1403 (9th Cir.1985) ("The officers' experience may be considered in determining probable cause."), *appeal after remand,* 833 F.2d 1284 (9th Cir.1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988).

■ The affidavit in this case included observations of counter-surveillance driving, car switches, the use of pagers and public telephones, suspicious deliveries, the use of a truck that bore the characteristics of a "load vehicle," and the recovery of two kilograms of cocaine from a woman who had just been in Gil's car. In light of this evidence, the district court did not err in finding that the warrants were supported by probable cause. *Cf. Ocampo,* 937 F.2d at 490 (similar actions created probable cause).

■ In addition to a demonstration of probable cause as to criminal activity, a warrant's validity is dependent on a showing that evidence probably will be found at the locations searched. *United States v. Greany,* 929 F.2d 523, 524–25 (9th Cir.1991); *United States v. Hove,* 848 F.2d 137, 140 (9th Cir. 1988). Probable cause that a resident of the location has committed a crime is inadequate, in itself, to satisfy this requirement. *United States v. Ramos,* 923 F.2d 1346, 1351 (9th Cir.1991). The defendants assert that there was insufficient information linking the residences searched to the criminal activity.

■ However, "[b]ased on the nature of the evidence and the type of offense, a magistrate may draw reasonable inferences about where evidence is likely to be kept." *United States v. Garza,* 980 F.2d 546, 551 (9th Cir. 1992). This Court "has recognized that '[i]n the case of drug dealers, evidence is likely to

be found where the dealers live.'" *United States v. Terry,* 911 F.2d 272, 275 (9th Cir. 1990) (quoting *United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986));

■ The surveillance observations listed in the affidavit provided a sufficient basis for the judge to infer that the defendants lived at the residences searched, and that they were involved in the drug trade. Considering the totality of the circumstances, "'there [was] a fair probability that contraband or evidence of a crime [would] be found'" in the Abuelitos and San Bruno residences. *United States v. Rodriguez,* 869 F.2d 479, 484 (9th Cir.1989) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). Since the warrants were supported by probable cause, the district court properly denied the defendants' suppression motions.

## B. Admissibility of the Drug Ledgers

Although initially limiting the admissibility of the ledgers found in the Abuelitos and San Bruno residences,[3] the district court ultimately admitted them for all purposes, including the truth of the matters asserted in the ledgers. The defendants argue that a proper foundation was not laid for admitting the ledger entries as admissions or co-conspirator statements under Fed.R.Evid. 801(d)(2), or as business records under Fed.R.Evid. 803(6).

■ We review the district court's decision to admit evidence for an abuse of discretion. *United States v. Warren,* 25 F.3d 890, 894 (9th Cir.1994). The admission of co-conspirator statements is also subject to abuse of discretion review, *United States v. Garza,* 980 F.2d 546, 553 (9th Cir.1992), while we review "for clear error the underlying factual determination that a conspiracy existed and that the statements were made in furtherance of that conspiracy." *United States v. Arambula–Ruiz,* 987 F.2d 599, 607 (9th Cir.1993). *See also United States v. Torres,* 908 F.2d 1417, 1425 (9th Cir.), *cert.*

*denied,* 498 U.S. 948, 111 S.Ct. 366, 112 L.Ed.2d 329 (1990).

### 1. *Admissions of Party Defendants*

■ To find that the ledgers constituted admissions, there must be sufficient evidence to enable the jury to decide that the defendants authored or adopted the ledgers. *See* Fed.R.Evid. 801(d)(2)(A) & (B). When evidence is admitted subject to the jury's finding that a threshold condition is satisfied, "[t]he judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition." Fed.R.Evid. 104(b) advisory committee's note; *see United States v. Reilly,* 33 F.3d 1396, 1404–05 (3rd Cir.1994) ("[O]nce the court finds that evidence has been introduced sufficient to permit a reasonable juror to find that the matter in question is what its proponent claims, a sufficient foundation for introduction in evidence has been laid."); *United States v. Monks,* 774 F.2d 945, 950 (9th Cir.1985) (holding that before introducing evidence as an adoptive admission, "the district court must first find that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement").

The defendants argue that the ledgers are not admissable as admissions because the government's handwriting expert was unable to conclusively determine whether the ledgers were written by the defendants. *See United States v. Ordonez,* 737 F.2d 793, 800–01 (9th Cir.1984) (ledgers written by unidentified persons are not admissible as admissions).

■ But there is no real mystery as to the participants in the drug conspiracy here or the meaning of the ledger entries themselves. The testimony of the handwriting expert that Montoya was "probably" the author of the Abuelitos ledger, combined with circumstantial evidence that Montoya wrote the ledger entries, provides an adequate foundation for admitting the ledger as an

---

**3.** The court originally ruled that the ledgers could not be offered to prove the truth of their contents, but could be "properly introduced as having been found in a certain location and an opinion can be stated as to what they are and what this type of thing is used for."

admission by Montoya.[4] As for the San Bruno ledger, the evidence supported the finding that it was a statement made or adopted by Gil. It was found on Gil's coffee table, the transactions listed in the ledger correspond with Gil's activities that were observed by the police, and the entries marked with "I took" and "I brought" dovetail with entries marked "Tono took" and "Tono brought" on the Abuelitos ledger.

 Given this evidence, the district court's decision, pursuant to Fed.R.Evid. 104(b), to allow the jury to decide whether the defendants made or adopted the drug ledgers was not an abuse of discretion. As the district court noted when making its ruling, "it's not a question of the court weighing the evidence at this time and deciding whether the showing is strong or weak.... The court merely needs to decide that there is a substantial enough showing to present the issue to the jury for them to perform that weighing function." *See Monks*, 774 F.2d at 950 (once district court has made necessary foundational finding, jury decides whether statement constitutes an admission).

### 2. *Co–Conspirator Statements*

 For the ledgers to be admissible as co-conspirator statements under Fed. R.Evid. 801(d)(2)(E), the following must be shown by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the author of the ledgers and the party against whom they are offered were members of that conspiracy; (3) that the ledgers were made in furtherance of the conspiracy; and (4) that the ledgers were made during the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987); *United States v. Peralta*, 941 F.2d 1003, 1007 (9th Cir.1991), *cert. denied*, 503 U.S. 940, 112 S.Ct. 1484, 117 L.Ed.2d 626 (1992); *United States v. Smith*, 893 F.2d 1573, 1578 (9th Cir.1990); *United States v. Mouzin*, 785 F.2d 682, 692–93 (9th Cir.), *cert.*

*denied*, 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986). It is essential that there be evidence regarding who made the statement, because "[i]n order to corroborate or refute [whether the declarant and the defendant were co-conspirators], the litigants must know the identity of the declarant." *Mouzin*, 785 F.2d at 692.

 These preliminary determinations are made by the court, not the jury, pursuant to Fed.R.Evid. 104(a). *United States v. Fleishman*, 684 F.2d 1329 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). That the ledgers were made during, and in furtherance of a conspiracy to which the defendants belonged is not seriously disputed. However, it is the identity element that draws fire from the defendants who contend that without direct proof of authorship, it was error to admit the ledgers as co-conspirator statements. We disagree. The government presented evidence that Gil and Montoya were co-conspirators, and proved, by a preponderance of the evidence, that the ledgers were the defendants' statements. As noted above, the ledgers were located in the defendants' residences and entries corresponded to surveilled activities. *See United States v. Smith*, 893 F.2d 1573, 1578 (9th Cir.1990) (holding that testimony that co-conspirator kept a drug ledger as a record of drug transactions was sufficient to establish that co-conspirator authored ledger). Also, the ledgers attributed deliveries to "Tono," a nickname associated with an established pseudonym for Gil. *See United States v. Schmit*, 881 F.2d 608, 613–14 (9th Cir.1989) (finding that defendant's son was author of a ledger that referred to "Dad" and contained a distinctive code word used by defendant's son). This evidence adequately identified the defendants as authors of the ledgers. Therefore, the district court did not abuse its discretion by admitting the drug ledgers as co-conspirator statements.

---

4. The circumstantial evidence presented by the government included: the ledger was found on the television stand in Montoya's home; the entries on the ledger corresponded with the defendants' observed actions; the ledger's beginning date was shortly after the arrival date on Montoya's plane ticket; the ledger referred to someone named "Tono," which is a shortened form of "Antonio," a middle name used by Gil; and an error made by Montoya when providing a handwriting exemplar (substituting the number "6" for the letter "l"), suggesting he was accustomed to writing in the ledger's code language.

Having determined that the ledgers are admissable both as admissions and as co-conspirator statements under Fed.R.Evid. 801(d)(2), we need not address whether they would be admissable under the business records exception to the hearsay rule.

## C. Restrictions on Cross–Examination

In an attempt to protect the identity of a confidential informant and to avoid compromising an ongoing investigation, the government sought an order that would limit the scope of cross-examination of its witnesses. Following an *in camera* hearing, the district court ruled that it would sustain government objections to cross-examination questions relating to (1) the place where surveillance began; and (2) the location of a warehouse where a Toyota truck was driven after being left in a parking lot by Gil. The defendants argue that this restriction violated their rights of confrontation and due process.

■■■ The limitations on the defendants' ability to cross-examine government witnesses were imposed to prevent disclosure of potentially privileged information. In determining whether the restrictions were reasonable in light of that necessity, we must weigh the defendants' rights to confront the government's witnesses against the government's interest in not compromising investigations and in protecting the informant's identity. *Roviaro v. United States,* 353 U.S. 53, 60–62, 77 S.Ct. 623, 627–29, 1 L.Ed.2d 639 (1957); *United States v. Buffington,* 815 F.2d 1292, 1299 (9th Cir.1987). When striking this balance, we examine three factors: (1) the degree to which the informant was involved in the criminal activity; (2) how helpful the informant's testimony would be to the defendant; (3) the government's interest in non-disclosure. *United States v. Gonzalo Beltran,* 915 F.2d 487, 489 (9th Cir.1990).

■■■ "Whether limitations on the cross-examination are so severe as to amount to a violation of the confrontation clause is a question of law reviewed de novo." *United States v. Vargas,* 933 F.2d 701, 704 (9th Cir.1991). The decision to deny disclosure of an informant's identity is reviewed for abuse of discretion. *Buffington,* 815 F.2d at 1299.

■■■ Our examination of the sealed record reveals that the informant's role in this case was relatively minor. We agree with the district court that the informant was "a mere tipster," who "ha[d] no information that could form a basis of either exculpatory or inculpatory information." Disclosure of the informant's identity would be of limited usefulness, but the harm of disclosure could be great. Thus, it was not error for the court to limit questioning and discovery that would tend to give away the identity of the informant.

■■■ Similar reasoning supports the district court's decision to deny disclosure of the warehouse's exact location. The sealed record demonstrates that disclosure would provide no exculpatory information and could compromise ongoing investigations involving the warehouse. The district court found that "the specific identity of that warehouse is of less materiality ... whereas ... the potential harm of disclosure of this material appears to be great."

■■■ The cross-examination limits did not interfere with the defendants' ability "to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of witnesses." *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974); *see also United States v. Feldman,* 788 F.2d 544, 554 (9th Cir.1986) ("The trial court does not abuse its discretion as long as the jury receives sufficient information to appraise the biases and motivations of the witness."), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). Because the cross-examination and discovery restrictions were no broader than necessary to protect the government's legitimate interests, and did not interfere with the defendants' rights to defend themselves, the restrictions violated neither the Due Process Clause nor the Confrontation Clause. *See United States v. Shabani,* 48 F.3d 401, 403–04 (9th Cir.1995).

## D. Admission of Expert Testimony Regarding the Modus Operandi of Drug Traffickers

Over defendants' objection, the district court permitted the government to present

expert testimony that drug traffickers often employ counter-surveillance driving techniques, register cars in others' names, make narcotics and cash deliveries in public parking lots, and frequently use pagers and public telephones. We review the district court's rulings on the admissibility of evidence for an abuse of discretion. *United States v. Lui,* 941 F.2d 844, 846 (9th Cir.1991).

The defendants argue that admission of this testimony was an abuse of discretion because it raises concerns similar to those raised by drug courier profile cases. This Court has "denounced the use of drug courier profile evidence as substantive evidence of a defendant's innocence or guilt." *Lui,* 941 F.2d at 847. In addition, the defendants contend that the modus operandi testimony was more prejudicial than probative because the activities described are not complex ones requiring expert explanation. *Id.* at 847–48 (holding that modus operandi evidence may be appropriate to explain complex criminal activity patterns).

■ These arguments are unavailing, however, because we have consistently held "that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi." *United States v. Johnson,* 735 F.2d 1200, 1202 (9th Cir.1984). *See, e.g., United States v. Espinosa,* 827 F.2d 604, 611–12 (9th Cir.1987) (allowing testimony that an apartment was a "stash pad" for drugs and money, that ledgers contained the names of the defendant's cocaine buyers, and that a particular exchange of packages was a drug transaction), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988); *United States v. Patterson,* 819 F.2d 1495, 1507 (9th Cir.1987) (testimony on how criminal narcotics conspiracies operate); *United States v. Stewart,* 770 F.2d 825, 831 (9th Cir.1985) (testimony regarding counter-surveillance driving and a delivery that was "probably" drugs), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986); *United States v. Fleishman,* 684 F.2d 1329, 1335 (9th Cir.) (testimony that defendant was acting as a lookout and engaging in counter-surveillance), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982); *United States v. Maher,* 645 F.2d 780, 783 (9th Cir. 1981) (per curiam) (testimony that defendant's actions were consistent with the modus operandi of persons transporting drugs and engaging in counter-surveillance). As these cases demonstrate, the type of conduct engaged in by the defendants is precisely the type for which modus operandi evidence is often used. "Such evidence helps the jury understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." *Johnson,* 735 F.2d at 1202. The probative value of this evidence was not outweighed by its prejudicial effect. The district court correctly allowed the expert testimony.

### E. Admission of the Note–Takers' Testimony Regarding the Surveillance Observations

■ Defendants next argue that the court erred by allowing officers who were "note-takers" to testify regarding the observations reported by other surveillance officers. After identifying this testimony as "hearsay," however, the defendants offer no explanation why they believe it was error for the court to admit the testimony.

The Federal Rules of Evidence provide an exception to the hearsay rule for statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed.R.Evid. 803(1). The statements of the surveillance officers easily satisfy the requirements of this exception. The surveillance officers were providing a description of the events at the same time they were witnessing them, so the testimony was admissible under the present sense impression exception.

### F. Variance Between the Indictment and the Proof at Trial

" 'A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.' " *United States v. Von Stoll,* 726 F.2d 584, 586 (9th Cir.1984) (quoting

*United States v. Cusmano,* 659 F.2d 714, 718 (6th Cir.1981)).

 The indictment here alleged a conspiracy extending from August 18, 1992, through September 23, 1992. The list of overt acts begins with Gil meeting a woman in a supermarket parking lot. At trial, however, the government presented evidence of a delivery made by Gil just prior to the first overt act listed in the indictment. Defendants argue that the evidence of this delivery constituted a prejudicial variance from the indictment that requires reversal. Because no objection regarding a variance from the indictment was raised at trial, the district court's admission of the evidence is subject to plain error scrutiny. *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986).

 While it is true that a defendant has a right not to be convicted of a crime not charged in the indictment, *Stirone v. United States,* 361 U.S. 212, 216, 80 S.Ct. 270, 272–73, 4 L.Ed.2d 252 (1960), the evidence of the delivery did not subject the defendants to an offense not already covered by the indictment. The disputed evidence concerned a delivery that occurred on September 2, 1992, well within the time period of the conspiracy alleged by the indictment. Furthermore, the act in question was consistent with the nature of the conspiracy because deliveries are a natural component to cocaine distribution conspiracies. Additionally, since "there is no requirement in conspiracy cases that the government disclose even all the overt acts in furtherance of the conspiracy," *United States v. Giese,* 597 F.2d 1170, 1180 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979), the defendants have no grounds for complaining about an indictment that listed all but one of the overt acts.

The district court did not plainly err by admitting the evidence of an additional overt act, because that act occurred during the time period that the conspiracy was alleged to exist, and because the act was consistent with the crime charged.

## G. Sufficiency of the Evidence

 When the sufficiency of evidence is challenged, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Count one of the indictment charged the defendants with conspiracy to distribute, and to possess, with intent to distribute, cocaine. At the time of the defendants' convictions, the elements of conspiracy were: (1) an agreement to commit a crime; (2) knowledge of the conspiracy's objectives and intent to help further them; and (3) an overt act in furtherance of the conspiracy by one of its members. *United States v. Abushi,* 682 F.2d 1289, 1293 (9th Cir.1982).[5]

 Defendants argue that the evidence of their knowing and intentional participation in the conspiracy is insufficient. According to the defendants, the evidence of conspiracy merely shows that they lived in the residences where 71 kilograms of cocaine and $86,000 were discovered, not that they knew of the contraband's existence or had an agreement to distribute the drugs. However, defendants' argument ignores other circumstantial evidence of their knowledge and intent, including the extensive surveillance observations and the drug ledgers. When taken collectively, and viewed in the light most favorable to the government, the evidence is sufficient to allow a reasonable jury to arrive at its verdict. *See United States v. Mares,* 940 F.2d 455, 458 (9th Cir.1991). ("Evidence of even a slight connection, if proven beyond a reasonable doubt, is sufficient to convict a defendant of knowingly participating in an established conspiracy.... Such a connection to a conspiracy may be inferred from circumstantial evidence." (Citations omitted)); *United States v. Disla,* 805 F.2d 1340, 1348 (9th Cir.1986) ("A conspiracy may be proven by circumstan-

---

5. The Supreme Court recently held that "[i]n order to establish a violation of 21 U.S.C. § 846, the Government need not prove the commission of any overt acts in furtherance of the conspiracy." *United States v. Shabani,* —— U.S. ——, 115 S.Ct. 382, 385, 130 L.Ed.2d 225 (1994).

tial evidence that the defendants acted together with a common goal.").

## H. Gil's Sentence

Gil argues that the district court erred when calculating his sentence under the Sentencing Guidelines by using the amount of cocaine listed in the ledgers (459 kilograms) rather than the amount of cocaine seized (71 kilograms). Gil contends that the use of the ledgers, "some of which were never identified as to authorship, and none of which directly implicated ... Gil other than by supposition," is clearly erroneous. The court's reliance on the drug ledgers resulted in a sentence range of 235–293 months rather than 188–235 months. According to Gil, a stronger showing than that presented by the government is required before the higher guideline range can be imposed. *See United States v. Phillippi,* 911 F.2d 149, 151 (8th Cir.1990) (rejecting the use of informant's testimony to calculate the amount of cocaine for determining the defendant's sentence, because the relevant dates were not "clearly established"), *cert. denied,* 498 U.S. 1036, 111 S.Ct. 702, 112 L.Ed.2d 691 (1991).

▮▮▮▮▮ Gil's argument has some emotional appeal, particularly because of the disparity between Gil's sentence and that of his co-defendant Montoya,[6] but it is not supported by our precedent. In *United States v. Restrepo,* 946 F.2d 654, 656–57 (9th Cir. 1991) (en banc), *cert. denied,* 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992), this Court rejected the argument that a clear and convincing standard of proof was necessary in sentencing. Instead, we held "that the preponderance standard of fact-finding generally is adequate to protect any interests a properly convicted defendant retains at sentencing." *Id.* at 656 (citing *McMillan v.*

*Pennsylvania,* 477 U.S. 79, 92, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986)). *See also United States v. Wilson,* 900 F.2d 1350, 1353–54 (9th Cir.1990) ("We hold ... that district courts are constitutionally required to make factual determinations underlying application of the Guidelines by at least a preponderance of the evidence.").

The Guidelines make clear that when the quantity of narcotics seized does not reflect the amount of drugs involved in a conspiracy, the district court "shall approximate the quantity of the controlled substance. In making this determination, the court may consider ... financial or other records." USSG § 2D1.1, comment (n. 12). Likewise, USSG § 1B1.3(a)(2), comment (backg'd), notes that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction."

Applying this reasoning, courts have consistently based sentencing calculations on drug quantities derived from ledgers or other records. *See, e.g., United States v. Tabares,* 951 F.2d 405, 410 (1st Cir.1991) (holding that district court's finding that drugs referred to in a ledger were part of the conspiracy was not clearly erroneous); *United States v. Straughter,* 950 F.2d 1223, 1235–36 (6th Cir. 1991) (allowing the use of financial records to corroborate co-conspirator's testimony regarding quantity), *cert. denied,* 503 U.S. 948, 112 S.Ct. 1505, 117 L.Ed.2d 643 (1992); *United States v. Carper,* 942 F.2d 1298, 1303 (8th Cir.) (allowing the use of financial records to estimate drug quantity), *cert. denied,* 502 U.S. 993, 112 S.Ct. 614, 116 L.Ed.2d 636

---

**6.** The court used 71 kilograms as the amount of cocaine for calculating Montoya's sentence, in spite of the fact that the ledgers were equally applicable to both defendants. Montoya was sentenced to 135 months.

Generally, there is no obligation to equalize the sentences of co-defendants, as long as the disparity is not "unwarranted." *United States v. Shabani,* 48 F.3d 401, 404 (9th Cir.1995). The transcript of Montoya's sentencing hearing reveals that the government decided not to pursue its argument that the ledgers should be used to

calculate Montoya's sentence. Apparently, the government didn't feel it had carried its burden of proving Montoya's connection with the 459 kilograms of cocaine listed in the ledgers.

It could be argued that the district court created an "unwarranted" sentencing disparity by not using the ledgers to calculate Montoya's sentence, but Gil did not raise the issue on appeal and Montoya's sentence is not before us. Therefore, we decline to consider whether the sentencing disparity was "unwarranted" or whether it violates Gil's equal protection rights.

(1991); *United States v. Cagle*, 922 F.2d 404, 407 (7th Cir.1991) (permitting court's reliance on DEA agent's testimony regarding drug ledger when determining quantity).

 Gil contends that these cases are distinguishable because, in the present case, proof of the ledgers' authorship and their connection with Gil was never definitively established. However, just as the court did not abuse its discretion in finding that the circumstantial evidence provided an adequate basis for admitting the ledgers, it did not clearly err in concluding that a preponderance of the evidence supported the use of 459 kilograms in calculating Gil's base offense level.

### III.

For the foregoing reasons, the defendants' convictions and Gil's sentence are AFFIRMED.