76 F.3d 388
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy ALEXANDER, Defendant-Appellant.
 No. 94-10568.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 16, 1995.
Decided Jan. 18, 1996.
 
 Before: SCHROEDER, FLETCHER, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Timothy Alexander appeals from his conviction by a jury on charges of aggravated sexual abuse (18 U.S.C. § 2241(a)(1)), assault with a dangerous weapon (18 U.S.C. § 113(c)), using or carrying a firearm during the commission of a crime of violence (18 U.S.C. § 924(c)), burglary (18 U.S.C. § 13 assimilating Cal.Penal Code §§ 459 & 460(a)), and threatening a witness (18 U.S.C. § 1512(b)(3)). He contends that the trial court erred by (1) allowing improper cross-examination of defense witnesses regarding the victim's character for truthfulness; (2) precluding cross-examination of the victim regarding inconsistent statements she made about her past sexual activities; (3) restricting cross-examination of the victim regarding her military history and restricting discovery of her military file; and (4) restricting discovery of documents subpoenaed from the Monterey County Rape Crisis Center.
 
 
 3
 We have jurisdiction, 28 U.S.C. § 1291, and affirm.
 
 BACKGROUND
 
 4
 On the morning of July 29, 1993, Adelfa Reyes Shaw, then a Specialist in the United States Army, awoke to find a man with a revolver in his hand straddling her. The attacker, whom she later identified as Timothy Alexander, pinned her down, grabbed her neck, hit her, including pistol-whipping her by slamming the butt of the gun into her forehead, and sexually assaulted her.
 
 
 5
 Lab results of semen samples taken from Shaw's body showed that the semen belonged to Alexander. Alexander's left thumb print was found on the outside of the sliding half of Shaw's guest bathroom window. Alexander's semen was found on the bed sheets, as were his earring and three buttons from Shaw's nightgown.
 
 
 6
 Shaw testified that she had met Alexander in early June 1993 in the Ford Ord commissary parking lot, at which time they talked for a few minutes. Several days later Alexander called Shaw and asked to come over. He came over for about an hour and they talked. Shaw never kissed Alexander or otherwise touched him and had no romantic interest in him.
 
 
 7
 Alexander admitted at trial that he had intercourse with Shaw on the morning of July 29, 1993 but contended that she had invited him to her apartment and that they had consensual sexual intercourse. He testified that he and Shaw had previously had consensual sexual intercourse on June 28, 1993. As for the fingerprint, Alexander testified that when he arrived at the apartment Shaw could not hear him, so he slid open the bathroom window and called to her. He said that after intercourse, he and Shaw began arguing because he told her he was moving to Georgia and because he was planning on leaving her apartment so quickly after having had sex. Alexander admitted hitting Shaw. He said he hit her after she began poking his chest and calling him names.
 
 DISCUSSION
 
 8
 I. Cross-Examination of Defense Character Witnesses
 
 
 9
 Alexander contends that the trial court erred in allowing cross-examination of defense character witnesses going to the ultimate jury question of whether the victim Adelfa Shaw was telling the truth. The trial court's ruling is reviewed for an abuse of discretion. See United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995).
 
 
 10
 The defense called four of Shaw's supervisors and coworkers to testify that Shaw had a bad character for truthfulness. Lieutenant Andrew Overfield, Sergeant Phillip Dawkins, Sergeant Timothy Kigler, and Specialist Donnie Griffin each testified on direct examination that Shaw's character for truthfulness was not good. Defense counsel asked Overfield and Dawkins whether they had an opinion as to whether Shaw would testify truthfully under oath. Dawkins testified that he believed that Shaw probably would not; Overfield did not have an opinion. On cross-examination, over defense objection, the prosecution asked Kigler a series of questions, including whether he believed Shaw would testify untruthfully under oath. The prosecutor asked:
 
 
 11
 1. Ms. Shaw didn't have a reputation for falsely accusing people of wrongdoing, did she?
 
 
 12
 2. And she didn't have a reputation about being untruthful about the conduct of another person, did she?
 
 
 13
 3. And she also did not have a reputation for being untruthful that she would get other people in trouble?
 
 
 14
 4. And she didn't have a reputation for giving false reports, did she?
 
 
 15
 5. Is it your opinion that Ms. Shaw is the type of character that she would falsely accuse someone of wrongdoing?
 
 
 16
 6. Is it your opinion that she would falsely give statements about the conduct of another person?
 
 
 17
 7. Is it your opinion that she is the--has the character to be untruthful under oath?
 
 
 18
 8. And how about giving false police reports, in your opinion would she do that?
 
 
 19
 Kigler answered each question in the negative. The prosecution asked substantially the same questions of Griffin, who also answered in the negative.
 
 
 20
 The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation as to the witness' character for truthfulness or untruthfulness. Fed.R.Evid. 608(a)(1). Evidence of truthful character is admissible only after the witness' character for truthfulness has been attacked by opinion, reputation or other evidence. Fed.R.Evid. 608(a)(1). As Shaw's character had been attacked, the prosecution was entitled to present evidence of her truthful character. Cf. United States v. Santiago, 46 F.3d 885, 891 (9th Cir.) ("vouching" for witnesses by the prosecution permissible if the defense has attacked the credibility of those witnesses in opening argument), cert. denied, 115 S.Ct. 2617 (1995). On cross-examination, the prosecution was entitled to impeach Kigler and Griffin's testimony that Shaw had a bad character for truthfulness by showing that such character was limited to Shaw's work performance and did not translate into dishonesty in other aspects of her life. See United States v. Vasquez, 858 F.2d 1387, 1392 (9th Cir.1988) (cross-examination permitted when "reasonably related to the issues the defendant put in dispute by his testimony on direct"), cert. denied, 488 U.S. 1034 (1989); Jack B. Weinstein & Margaret A. Berger, 3 Weinstein's Evidence p 608 (1995) ("cross-examination [of character witnesses] can be expected to expose defects of lack of familiarity and to reveal reliance on isolated or irrelevant instances of misconduct").
 
 
 21
 Opinion testimony as to whether a particular witness at trial is telling the truth as to the specific events at issue is generally not permitted. See, e.g., United States v. Binder, 769 F.2d 595, 601-02 (9th Cir.1985); United States v. Awkard, 597 F.2d 667, 670-71 (9th Cir.), cert. denied, 444 U.S. 885 (1979). In this case, however, the prosecutor did not ask Kigler and Griffin whether they believed Shaw was telling the truth about having been raped. He asked them their opinion as to Shaw's character for truthfulness under various circumstances. At some point, eliciting such testimony could conceivably become tantamount to eliciting testimony about the witness' truthfulness about the events at issue at trial. In this case, however, there was no impropriety. Defense counsel himself asked two of his own witnesses whether they would believe Shaw under oath. The prosecutor was entitled to counteract and impeach the defense witnesses' negative character testimony about Shaw by probing the circumstances under which this bad character manifested itself and by attempting to rehabilitate Shaw's credibility. The district court did not err.
 
 
 22
 II. Cross-Examination Regarding Inconsistent Statements About Semen Stains on Shaw's Bed Linen
 
 
 23
 Alexander contends that the district court erred by precluding him from cross-examining Shaw regarding inconsistent out-of-court statements made about the presence of semen stains on her bed linen. The district court excluded such evidence on the grounds that it was barred by Rule 412 of the Federal Rules of Evidence ("the rape shield law"). The district court's decision to limit the scope of cross-examination is reviewed for an abuse of discretion. Manning, 56 F.3d at 1197. To the extent Alexander contends that the court's limitation on cross-examination violates the Confrontation Clause, the district court's ruling is reviewed de novo. See United States v. Gil, 58 F.3d 1414, 1421 (9th Cir.1995), cert. denied, 116 S.Ct. 430 (1995). To the extent Alexander contends that the court incorrectly construed Rule 412, the court's ruling is reviewed de novo. See Manning, 56 F.3d at 1196.
 
 
 24
 During her sexual assault exam at the hospital on July 29, 1993, Shaw informed medical personnel that the last time she had had sexual intercourse was three weeks prior to the rape at Ft. Hunter Liggett, her work station. In October 1993, when Army Criminal Investigation Division Special Agent Michael J. Clifford questioned Shaw about semen stains in her bed linen, Shaw stated that she had last had sexual intercourse approximately one week before the attack at Fort Ord, and that she had not washed her bed sheets in that time. She added that she does not wash her bed comforter as regularly as her bed sheets and, as a possible explanation for the amount of semen found, added that she permitted single soldiers in her unit to use her residence and that they might have had intercourse in her bed.
 
 
 25
 Rule 412 bars evidence offered to prove the victim's sexual behavior and alleged sexual predisposition. Rule 412 limits the admissibility of evidence of a rape victim's past sexual behavior to three situations: (1) when constitutionally required, (2) when relevant and more probative than prejudicial on the source of semen or injury, and (3) when relevant and more probative than prejudicial on the issue of consent. See generally United States v. Payne, 944 F.2d 1458, 1468 (9th Cir.1991), cert. denied, 503 U.S. 975 (1992).
 
 
 26
 At trial, Alexander sought to introduce Shaw's inconsistent statements about her past sexual behavior as an attack on Shaw's general credibility. Even assuming the evidence would have been otherwise admissible on cross-examination as a specific instance of dishonesty under Rule 608(b), it does not fall within one of Rule 412's three exceptions and thus must be excluded. See Advisory Comm. Note following Rule 412, 1994 Amend. subd. (a). This exclusion does not violate the Confrontation Clause. "We have found in the past that a trial court's limitation of cross-examination on an unrelated prior incident, where its purpose is to attack the general credibility of the witness, does not rise to the level of a constitutional violation of the defendant's confrontation rights." Payne, 944 F.2d at 1469. Alexander was provided ample opportunity to inquire into Shaw's character for honesty and to cross-examine her regarding prior instances of dishonesty.
 
 
 27
 Alexander also contends that Shaw's statements constitute evidence of her motivation to hide the fact that she had previously engaged in consensual sexual intercourse with Alexander four weeks before the alleged rape. We disagree. Shaw's first saying that the last time she had sexual intercourse was three weeks before the rape at Fort Hunter Liggett, but later saying that the last time she had sexual intercourse was one week before the rape at Fort Ord does not advance the defense theory that Shaw had engaged in consensual sex with Alexander four weeks before the rape at Ford Ord. Shaw did not state that she had sexual intercourse with Alexander before the rape. Since Alexander admits he was the source of the semen found on Shaw the night of the rape, Shaw's having had prior sexual intercourse with other individuals is irrelevant. Similarly, whether or not other soldiers had sexual intercourse in Shaw's bed is irrelevant to whether Shaw had consensual sexual intercourse with Alexander.
 
 
 28
 The evidence of Shaw's inconsistent statements about prior semen stains found on her bed linen is minimally (if at all) probative on the issue of consent and extremely prejudicial. The district judge properly excluded the evidence.
 
 III. Shaw's Military History
 
 29
 Alexander contends that the district erred in denying the defense full access to Shaw's military file. Alexander further contends that the court erred in restricting cross-examination of Shaw regarding her poor job performance in the military and imminent disciplinary proceedings and in restricting him from introducing extrinsic evidence of such. Alexander asserts that such evidence would have provided support for the defense theory that Shaw fabricated the rape allegation as a means of gaining sympathy from her superiors to avoid adverse disciplinary actions due to her poor job performance.
 
 A. Discovery of Shaw's Military File
 
 30
 Alexander sought pretrial access to Shaw's complete military personnel file on the grounds that it might contain information that could be used to impeach Shaw. The prosecution contended that the file contained no exculpatory information. The magistrate judge ordered the government to submit Shaw's entire military file for in camera review. After reviewing the materials, the magistrate judge ordered the government to produce thirteen pages of records relating to counseling and discipline Shaw received in mid-July 1993.
 
 
 31
 Whether additional information in Shaw's military file should have been disclosed to the defense turns on whether it is material, exculpatory information within the meaning of Brady v. Maryland, 373 U.S. 83 (1963); see also United States v. Bagley, 473 U.S. 667, 676 (1985) (impeachment evidence); Giglio v. United States, 405 U.S. 150, 154 (1972) (same). Evidence is material under Brady if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682. The parties agree that this Court reviews the district court's refusal to produce military personnel records to the defense for use in cross-examination under an abuse of discretion standard. United States v. Antone, 981 F.2d 1059, 1061 (9th Cir.1992).[1]
 
 
 32
 We have carefully reviewed the entire military file, which was filed under seal, and conclude that no Brady information was suppressed. The nondisclosed information in the military file is essentially cumulative. "Evidence that is merely cumulative is not material." United States v. Strifler, 851 F.2d 1197, 1202 (9th Cir.1988), cert. denied, 489 U.S. 1032 (1989). The additional details are not probative of bias. There is no reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The district court did not err.
 
 B. Cross-Examination and Evidence at Trial
 
 33
 At trial, evidence was produced regarding the so-called "shower-run" incident, during which Shaw left base without permission on July 14, 1993, and an incident in which Shaw was counseled for not having her military driver's license with her during the July field exercises. On cross-examination, Shaw testified that by July 29, 1993, she knew that Sgt. Kigler was planning to recommend some type of formal disciplinary proceedings against her under the Uniform Code of Military Justice ("UCMJ"). She knew that he was "upset" and "fed up" with her because of the "shower-run" and other incidents. She testified that she believed the action to be brought against her would be a so-called "Summarized" or "Summary" Article Fifteen charge, although she did not know for sure. Shaw also admitted on cross-examination that she was having financial problems in July 1993 and that the Army had reduced her pay check to cover advances she had received.
 
 
 34
 Alexander contends that he should have been able to further cross-examine Shaw and introduce extrinsic evidence regarding her disciplinary problems. The district court's decision to limit the scope of cross-examination is reviewed for an abuse of discretion. See Manning, 56 F.3d at 1197. To the extent Alexander contends that the district court's restrictions violate the confrontation clause, the district court's ruling is reviewed de novo. Gil, 58 F.3d at 1421.
 
 
 35
 A defendant has the right to cross-examine a prosecution witness and present extrinsic evidence as to her bias. See, e.g., United States v. Abel, 469 U.S. 45, 52 (1984); see also Olden v. Kentucky, 488 U.S. 227, 229-33 (1988) (rape complainant had motive to fabricate charge of rape because of fear of reprisal from live-in boyfriend). Alexander, however, was not prevented from doing this. The district court permitted Alexander to introduce evidence of, and cross-examine Shaw regarding, all disciplinary proceedings she faced at the time of the assault. The minimal restrictions it imposed were entirely reasonable. The jury had sufficient information with which to apprise Shaw's bias and motives. United States v. Jackson, 882 F.2d 1444, 1447 (9th Cir.1989); United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). Any further cross-examination or extrinsic evidence would have subjected Shaw to harassment and been cumulative and only marginally relevant. Delaware v. Van Arsdall, 475 U.S. 673, 680-81 (1986).
 
 
 36
 IV. Records Subpoenaed from the Monterey County Rape Crisis Center
 
 
 37
 Alexander subpoenaed records from the Monterey Rape Crisis Center ("MRCC") relating to a contact initiated by a rape crisis counselor with Shaw while Shaw was being treated at the Fort Ord hospital on July 29, 1993. The MRCC moved to quash the subpoena. The MRCC contended that disclosure of the information requested would, inter alia, violate the Victims of Crime Act, 42 U.S.C. §§ 10604(d).[2] The district court reviewed the records in camera and ordered them filed under seal. The court found that the Victims of Crime Act's prohibition against disclosure applied and that nothing in the records justified overcoming the prohibition.
 
 
 38
 We need not decide whether the disclosure of rape crisis counselor records violates the Victims of Crime Act. We have carefully reviewed the MRCC records and conclude that there is no information in the records that would have been relevant and material to the defense. Accordingly, even assuming arguendo that the district court erred in its interpretation of the Victims of Crime Act, any error was harmless.
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Generally, a district court's ruling on the prosecutor's duty to produce evidence under Brady is reviewed de novo. United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir.1991), cert. denied, 503 U.S. 971 (1992). When, however, the government has submitted a probation file for in camera review, this Court has said that it will only reverse for denial of Brady material from the file if the district court committed clear error. United States v. Strifler, 851 F.2d 1197, 1202 (9th Cir.1988). Under any standard of review, we find no error
 
 
 [2]
 The Victims of Crime Act, 42 U.S.C. § 10604(d) provides,
 Except as otherwise provided by Federal law ... no recipient of sums under this chapter, shall use or reveal any research or statistical information furnished under this chapter by any person and identifiable to any specific private person for any purpose other than the purpose for which such information was obtained in accordance with this chapter. Such information ... shall be immune from legal process and shall not, without the consent of the person furnishing such information, be admitted as evidence or used for any purpose in any action, suit, or other judicial, legislative, or administrative proceeding.