141 F.3d 1181
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff-Appellee,
v.
Samuel MERCADO-ULLOA, aka Samuel Ulloa Mercado, aka
Guadelupe Sandoval, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Gilbert U. SANCHEZ, Defendant-Appellant.
 No. 96-30355, 97-30036.
D.C. No. CR-96-00415-1-JCC.
D.C. No. CR-96-00415-JCC.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1998.
Decided Mar. 5, 1998.
 
 Appeal from the United States District Court for the Western District of Washington John C. Coughenour, District Judge, Presiding.
 Before BRUNETTI, RYMER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Samuel Mercado-Ulloa appeals his jury conviction and Gilbert Ulloa Sanchez appeals his sentence for conspiracy to distribute cocaine, 21 U.S.C. §§ 841, 846; distribution of cocaine, 21 U.S.C. § 841; and possession of cocaine with intent to distribute, 21 U.S.C. § 841. We have jurisdiction, 18 U.S.C. § 3742, and we affirm.
 
 
 3
 * Mercado argues that the government failed to disclose Sanchez's post-arrest statement to Detective Zweiger in which Sanchez stated that he worked for someone other than Mercado and was willing to name his cocaine suppliers in California in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Assuming the issue isn't waived, there is no Brady violation because Sanchez's statements were brought out in examination and cross-examination of Zweiger. United States v. Tham, 884 F.2d 1262, 1266 (9th Cir.1989).
 
 II
 
 4
 Mercado argues that evidence taken from the Lynden residence should have been suppressed because the search warrant affidavit was based on inconsistent information from an informant and lacked anything showing a nexus between the Lynden residence and the alleged narcotics trafficking. We disagree. Hoban's affidavit established Pantoja's reliability by explaining that Pantoja had provided reliable information in two prior investigations; by describing how police detectives had directed, supervised and surveilled Pantoja's dealings with Mercado and Sanchez; and by detailing Pantoja's personal involvement in the various meetings setting up and then executing his cocaine purchase from Mercado and Sanchez. See United States v. Ayers, 924 F.2d 1468, 1478-79 (9th Cir.1991) (holding that affidavit's recounting of informant's personal involvement in drug sale, prior record of dependability, and detective's independent corroboration of informant's information established reliability); United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir.1986). Moreover, it was Hoban's error (corrected by a supplemental affidavit), and not Pantoja's lie, that labeled Mercado as Pantoja's "sole" instead of "a" source of his cocaine supply.
 
 
 5
 "In the case of drug dealers, evidence is likely to be found where the dealers live." Angulo-Lopez, 791 F.2d at 1399; United States v. Gil, 58 F.3d 1414, 1418-19 (9th Cir.1995). As the affidavit detailed Pantoja's cocaine transactions with Mercado and Sanchez, and explained that Sanchez and Mercado shared the Lynden residence, the magistrate judge could reasonably infer that evidence of their drug operation would likely be found at the Lynden residence. The magistrate could also rely on Hoban's conclusion that in his experience, drug traffickers hide contraband and other evidence of their drug operations at their residences. See Ayers, 924 F.2d at 1479; Gil, 58 F.3d at 1418.
 
 
 6
 The totality of the circumstances set forth in the Hoban affidavit thus established a substantial basis for concluding that probable cause supported the issuance of a search warrant for the Lynden residence.
 
 III
 
 7
 Mercado argues that reversal is required for impermissible vouching. First, the trial court did not abuse its discretion in allowing Detective Zweiger to testify about the criteria that narcotics agents generally use to evaluate potential informants. Zweiger did not mention Pantoja by name. Such testimony does not "plac[e] the prestige of the government" behind Pantoja's credibility as a witness. See United States v. Kearns, 61 F.3d 1422, 1427 (9th Cir.1995) (holding that an agent's testimony regarding the general importance of informants to drug investigations did not constitute improper vouching).
 
 
 8
 Second, Zweiger and Padukiewicz's "no" answers to questions regarding whether Pantoja had violated his informant contract or had ever provided false information do not amount to an expression of personal opinion by the detectives about his credibility; nor does their testimony regarding Pantoja's past performance guaranty Pantoja's truthfulness in Mercado's investigation. See United States v. Necoechea, 986 F.2d 1273, 1278-79 (9th Cir.1993) (testimony answering yes to whether witness's plea agreement required her to testify truthfully did not constitute vouching). Regardless, any error was cured by the trial court's instruction to examine the testimony of Pantoja, as a witness granted favorable treatment by the government, with greater caution than that of ordinary witnesses. Id. at 1280 (holding that any error in prosecutor's vouching for truthfulness of witness cured by trial court's instruction to weigh testimony of witness "with greater care"). Our review is for plain error because Mercado didn't object, id. at 1278, and we find none.
 
 
 9
 Finally, while more problematic, the AUSA's statement in his rebuttal closing argument that the narcotics agents "are going to know" if Pantoja had hoodwinked them into believing that Mercado was a drug dealer, was an invited response to the defense's attack on Pantoja's credibility in their closing argument and thus merely balanced out the defense's argument. See United States v. de Cruz, 82 F.3d 856, 863 (9th Cir.1996) (holding improper statements in prosecutor's rebuttal argument to be harmless in part because it was an invited response); cf. United States v. Kerr, 981 F.2d 1050 (9th Cir.1992) (prosecutor's personal opinion that witness wasn't hoodwinking jury). Given the court's instruction that attorney arguments are not evidence and the substantial evidence linking Mercado to the sale of cocaine, any impropriety in the prosecutor's remarks falls short of a "miscarriage of injustice." See Necoechea, 986 F.2d at 1280-81.
 
 
 10
 Thus, neither singly nor cumulatively do we believe these statements affected the jury's ability to be fair or contributed to Mercado's conviction.
 
 IV
 
 11
 Mercado argues that Pantoja's testimony linking Mercado to the Mexican Mafia constituted reversible error. However, the court struck Pantoja's reference to the Mexican Mafia and instructed the jury to disregard it. Given the court's quick remedial actions, Pantoja's testimony could not have affected the outcome of Mercado's trial.
 
 V
 
 12
 Mercado argues that admitting post-arrest statements of his nontestifying codefendant Sanchez and failing to sever his trial from Sanchez's violated his Confrontation Clause rights. Mercado contends that although Sanchez's statement that he worked for "someone in the Bellingham area" is not facially incriminating, the statement became incriminating when linked with other evidence introduced at trial. Assuming that it did, it was admissible. Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Mercado did not ask for a limiting instruction; and in light of surveillance that tracked Sanchez to Mercado's residence twice, the pager used to contact them both, evidence taken from Mercado's home, and the testimony of Pantoja linking Mercado to the sale of cocaine, Sanchez's statement that he worked for "someone in Bellingham" was far from the most damaging evidence against Mercado. We see neither any miscarriage of justice, United States v. Arias-Villanueva, 998 F.2d 1491, 1507 (9th Cir.1993) (applying plain error review to alleged Confrontation Clause violation), nor any error in failing to sever. Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).
 
 VI
 
 13
 Sanchez argues that the government's refusal to talk to him because he didn't have any information regarding Mercado was based upon an unconstitutional motive, and that this refusal to allow Sanchez to cooperate precluded the possibility of the government filing a motion for a downward departure under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Sanchez, however, has shown no unconstitutional or impermissible motive on the part of the government. Wade v. United States, 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). He said he didn't know anything about Mercado and the government thought otherwise. Under these circumstances, the government's interest in securing the conviction of Mercado was a legitimate government end that justified its refusal to accept Sanchez's offer to cooperate. See United States v. Burrows, 36 F.3d 875, 884 (9th Cir.1994) (holding that government had legitimate law enforcement purpose in refusing to file a downward departure motion where defendant refused to testify for the government).
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3